The last case this morning is number 5-18-0387, People v. Carr. Arguing for the appellant, Curtis Carr, is Caroline Borland. Arguing for the appellee, People of the State of Illinois, is Sharon Shanahan. Each side will have up to 10 minutes for their argument. The appellant will also have 5 minutes for a rebuttal. Please note, only the clerk of the court is permitted to record these proceedings. Good morning to each of you. Good morning, Your Honor. Good morning. If you are ready, Ms. Borland, I will begin. Okay, thank you. Good morning again, Your Honors. May it please the court, the errors in this case occurred throughout all phases of Curtis Carr's trial, during his voir dire, the presentation of evidence, jury instructions, and sentencing. I would note the state has conceded clear and obvious error in the second issue regarding the failure to instruct the jury on how to consider the out-of-court statements made by the complainant, M.F., and also just yesterday, the Illinois Supreme Court announced that they will be issuing People v. Burge on Friday, which does address our Rule 431B error, so I just wanted to give Your Honors notice of that. That will be coming down on Friday. So today, particularly in light of the state's concession of error, I will be focusing first on why this case was closely balanced, and thus why Carr should receive a new trial from that error, and then also touch upon why two of the errors, including the instructional error and the presentation of the prejudicial portions of, prejudicial portions of Carr's interrogation video, could have tipped the scales in Carr's favor. In terms of considering whether this case was close, in People v. Sebi, the Illinois Supreme Court held that a case is close when the outcome turns on witness credibility and when the defense presents evidence to contest the essential elements of the offense. Those factors existed here. In this case, there was no physical evidence presented to corroborate MF's testimony. Carr did not confess to these crimes, and there was no immediate outcry made by MF. The jury had to find MF credible to find Carr guilty. The close nature of this case is illustrated first by the fact that this was the second trial held on this case. At the first trial, the jury was deadlocked. Also, when you're looking at the factors at the most basic level, MF's testimony was rebutted by Carr, who denied her allegations during the interrogation. It was also rebutted by defense witnesses who denied that Carr had the opportunity to commit this offense. MF said these events occurred outside Stephanie Murphy's house in Carr's semi-truck on the weekend of July 15th and 16th of 2013. But two defense witnesses said Carr was not with MF at the time. Stephanie Murphy said Carr was sleeping with her in her bedroom that night. He only got up to use the restroom once. Karen Gail Sovar, a friend of the Murphy's who was living in the night, saw two adults in Carr's bed, heard an adult male snoring at the time. She also added that also in the living room with her that night was one of the two teenagers, either MF or her older sister Katie. There was no dispute that Katie was sleeping in one of the bedrooms that night. So the inference for the jury presented was that this was MF sleeping there and she was not with Carr in a semi as she claimed. There were also closely balanced pieces of regarding MF's presented on whether the timing of that outcry rendered it reliable. A state expert said delays are not uncommon. A defense expert said delays are the exception rather than the rule. There were also some suspicious circumstances surrounding that statement. MF first accused Carr of all of this. This whole case came about because MF wrote in a journal that she was going out with Carr, that he was the best BF ever, and they had done stuff and slept naked and he gave her an orgasm, but she was still a virgin. At the time that MF made this journal entry, it had recently come to light that her older sister Katie had been involved in sexual activity. And in fact, that occurred at Stephanie Murphy's house the very same weekend that MF came to allege Carr of having committed these acts on her. Rational juries could infer that possibly one of the reasons MF made this journal entry was because she was hoping or she said she wanted her sister to find it. She intended her sister to find it. Maybe she was hoping to impress her sister or maybe just knowing all this was going on, she was kind of fantasizing about what that might feel like. But then once it was brought to light, once Katie brought the journal to the attention of MF's parents and police became involved, MF may have felt there was no going back, was something the jury could consider. And in fact, it is interesting, she did not stick to what she said in her journal at that point. She then describes kind of a 180, Carr's not her boyfriend, he's someone who came in and committed all of these attacks upon her, surprisingly, and she was scared. Of course, there was other crimes evidence presented by the state, substantial other crimes evidence. Again, we're looking at was this case closely balanced, the defense presented evidence to counter that testimony. And even if the jury believed that evidence, it's still this MF's allegations still hinged on her credibility. And there were still issues for the jury to resolve, including the defense witnesses saying she wasn't with Carr at the time. And I would also note that the other crimes evidence, there was substantial text messaging, social media, all of these things to corroborate, that degree of evidence was not present with respect to MF's allegations against Carr. So the case was still close on that issue. Sebi also instructs that when a case is closely balanced, any clear and obvious error occurring will be deemed actually prejudicial and require a new trial. So to the extent that there is no dispute, that there was clear and obvious error in the failure to instruct the jury on how to consider MF's hearsay testimony, that in and of itself requires a new trial without speculating as to how it may have affected the evidence. But when you do start to consider that, it only shows why this error was particularly prejudicial in this case. Hearsay statements are not traditionally allowed at criminal trials, because the defendant does not have the opportunity to confront the witness at the time it's made. And because there's no gravity of testimony, there's no gravity of what the force of what the complainant is saying. She's not saying it under oath. So there's no consequences. So when this can come in, and it can come in under the statute here, there are protections that has to accompany the hearsay evidence. One of those is IPI 11.66, which tells the jury they get to decide how much weight to give to the prior statements. And they should do so by considering the age and the nature of the circumstances in which they were made. In this case, this was so important, this instruction, as I've noted, one of the things the jury had to resolve specifically was how to consider MF's statements. And to that end, the state also relied heavily on the prior statements to corroborate her testimony in trial. It was important for the jury to know they got to be the one to decide how much weight to give to that evidence. And in doing so, they should consider MF's age and maturity level at the time. That specifically would have guided them to consider some of the stuff that may have been going on and how her story changed once her parents became involved. So the failure to give that instruction in this case could have tipped the scales against Carr. So too could have the improperly played portions of Carr's interrogation video. Again, when we're looking at closely balanced evidence, this video was not played at Carr's first trial. His jury was deadlocked. Specifically here, we're not objecting to the entire video being played, just the portion where the officer stated over and over, no matter how much Carr denied, that they believed MF and her sister. They knew Carr had done this. To be clear, the issue is not whether this portion of the tape constituted opinion testimony or whether it was admissible as past or present opinion testimony. Whether or not it was opinion testimony, it had to be relevant. And that was the issue raised at trial, the objection that raised at trial, the same objection we are raising here. To that end, on the probative value side, this portion was not all that relevant. Carr did not say anything or change his demeanor in response to the officer's insistence that he was guilty. The state has not disputed that on appeal. At trial, they also did not mention this evidence at all during closing, showing that this was not really relevant. There's a huge hour and a half video. They didn't mention his statement once in closing. And again, it was not presented at Carr's first trial. On the other hand, this evidence was very prejudicial to Carr. I would note this court's decision in McCollum, where this court has addressed a similar issue before, one of the things the interrogating officers testified to in that case was that he often lies during interrogations. And he did lie in that interrogation played before the jury. And he explained that he does this stuff to see how the suspect responds. So in McCollum, the jury was like forewarned, okay, we're hearing this to see what the defendant responds to. There was no similar testimony given in this case to explain that nor was the jury instructed on how to consider the officer statements to Carr. So they were free to consider that for their substantive value. They could say, these jurors believe Carr's guilty, no matter how much he tried to deny it. Given this closely balanced case, given the pivotal nature of finding MF credible, this could have in fact been something that tipped the scales in the state's saying, maybe we have doubts about this. Maybe we're not sure. The very easy thing was these officers who investigated this case, who have years of experience, they believe MF, they don't believe Carr's denial. So why should we? So for that reason, there was a, that error should contribute to the need for a new trial as well. And if this court does not have questions, I will sum up my conclusion very quick or rather this, this case was a credibility contest in its truest form. The state has conceded error in the jury instructions, but there were fundamental errors occurring at all phases of this trial. So as we've explained further in the brief, therefore we would request that this court grant Carr a new trial. Thank you very much, Ms. Borland. You'll have additional time in reply. Ms. Shanahan. May it please the court, counsel. My name is Sharon Shanahan and I represent the people of the state of Illinois. I'm going to follow kind of in, in counsel's footsteps and saying that the Supreme Court has noted that it's going to issue an opinion on Friday that will determine the question of any further at that time. And I will move on much as my opponent did to discussing the plain air question and the amorphous question of what exactly is the error that's required in, in plain air in the, in, in the introductory argument, paragraph of the defense argument. He makes much of the fact that the state has conceded that the trial court committed clear obvious error because IPA 1166 was not given. But clear and obvious there is not plain error. And, and I think that's where defendant goes astray, clear and obvious there just means there is an error, but that as this court notes in the other issues in this brief, the state argued strongly that there was no error at all. But given the Illinois Supreme Court's decision in people versus Sergeant that said, even if it's not requested, which it was not in this case, the failure to give it is clear and obvious there. It doesn't mean it's plain air. We still have to go to whether the evidence is closely balanced. And I'm going to focus here on people versus Sebi because ever since it came out, counsel for defendants are almost consistently saying that if the evidence is close, that has to go back. But that's, that's not what Sebi said. And Sebi said, and I'm quoting here, whether the defendant has shown, so that's the first thing he has to do it, that the evidence was so closely balanced, not just closely balanced, but so closely balanced, that the error alone severely threatened to tip the scales of justice. That's an exact quote from Sebi really didn't say anything new. It throughout quoted directly from people versus Heron. And Sebi does not in any way do away with the showing of prejudice in first pronged plain error. Here are some paragraphs from from Sebi at paragraph 51, the defendant must meet his burden to show that the error was prejudicial. In other words, he must show that the quantum of evidence presented by the state against the defendant rendered the evidence closely balanced. At paragraph 68, a defendant must show prejudice to obtain relief under the first prong of the plain error doctrine. Prejudice rests not upon the seriousness of the error, but upon the closeness of the evidence. What makes an error prejudicial is the fact that it occurred in a close case, where its impact on the result was potentially dispositive. It is the closeness of sufficient evidence. And finally, I would note that this court's inquiry, again, quoting directly from from Sebi's involves an assessment of the evidence on the elements of the charge defense, along with any evidence regarding the witnesses credibility. Now, in fact, in Sebi, the facts were, in fact, very much he said, she said, the defendant and his two friends said one thing, the arresting officer and two other officers said another thing. They were all credible, and there was no other evidence. And Sebi said that because the deputy's testimony was largely consistent, but so was the testimony of the defendant and his witness. And there needed the prosecution or the defendant's accounts of the events were fanciful. That's, that's, you have to look at the facts and Sebi to understand its application. Now, in this case, we're not dealing with he said, she said, Mandy testified at trial exactly what happened and his story was consistent. It was since defendant seems to think so much about the mistrial that occurred earlier, a mistrial that occurred because at an 11 to one to convict. So one person was not convinced. So it's hardly means that there was great evidence of his innocence last time but but nonetheless, in her first trial, she testified very, very similarly, similarly to what she testified this time, she was a very, very credible evidence out witness. Then, then we look at the evidence that was a substantive evidence that was admitted of the witnesses that she told this to she told her grandmother, she told her grandmother in front of her mother, her father and her sister. She later told her father in detail that she did. She testified under what has to be terribly traumatic circumstances in front of total strangers at forensic interviews, that he did it. She wrote in her journal that he did it. Even things that 12 year olds should not know, like she was still a virgin because I'm too hard for his eight inches. All of this is substantive evidence, because our legislature believes that these outcry of young children are worthy of belief. And I would note that in this particular situation in this situation where we're dealing with closely balanced, that this court can consider the hearsay outcry statements on the prosecution side of the scale as it determines whether the evidence was closely balanced for purposes of plain error review. That's people versus Marco and people versus moon. There was even more evidence in addition to to Mandy's testimony. In addition to the substantive evidence that was admitted to other people, there was the other substantive evidence that the defendant, after he did it to her while he was out on bail, sexually assaulted another child and was grooming yet another. And against all of this is the defendant's testimony. And yes, they did say what defendant just said, which is that, oh, they said he was he was in the house all night. And but that's not all they said. I mean, again, this is a second trial. But on the first trial, Stephanie said she went out to the defendant's semi not he wasn't in bed with her. She went out to his truck to wake him up on the morning and that the defendant and the victim came into the house. That's completely opposite from what she said the second time around. So she is certainly not a credible witness. Karen, another the one that said she she saw basically she saw shapes. It was dark. She saw shapes. She decided this shape was too big to be a girl or too small to be the defendant. She heard sounds. But even she said that in her interview with the NY State Police that she did not know where at least one of the girls was sleeping when she woke up and she admitted that her memory of the night was not good. And finally, Stephanie's mother, Tammy, said she hadn't a clue if it was possible for the defendant to be alone in the truck with the victim. And they even contradicted each other. Stephanie said the victim was shy and clingy, but her mother said that she was loud and hung all over the over. I've gone through all of this evidence and I'm out of time, but I've gone through because all of these issues deal with whether the evidence was close. The evidence was not close. And under the proper reading of 70, so close that the error alone threatened to tip the scales of justice against the defendant. That's that's the rule, not just close, but so close that the error alone severely threatened to tip the scales of justice. This is a review of the evidence here. The evidence was not close. That resolves all of the issues in this case. Okay. Thank you, Ms. Shanahan. Ms. Borland? Yes. Briefly, your honors. I think the state and I largely agree about what Sebi says. The case has to be close. And then in that context, what makes the error prejudicial is that the case is close. So we submit for a lot of what I said in opening that this case was closely balanced. I would note that in Sebi, the defense witnesses were impeached as well, as were the state witnesses. And the court said there were impeachments on either side, but neither side was, I don't believe they use the word fanciful. I think I'm confusing, but neither side was implausible. And that's what they were looking to in that case here as well. Yes. Stephanie Murphy was impeached from her prior testimony. So too was one of the state witnesses. Katie testified at trial that MF was supposed to sleep with her that night, but when she went to sleep, MF was not there. She was just gone when Katie woke up the next morning. But the defense impeached her with her prior statement to Ginger Meyer, the forensic interviewer, she had said something different. She said then that Katie was with, I'm sorry, MF was asleep with her that night, but she was not there when she woke up. And again, by that point, the theory was that she was already gone in the car with, in the truck with car to Missouri to drop off the load. So there were impeachments on both sides. And that just goes to show even further why this was a closely balanced case. Plus there was some differences at trial. Stephanie Murphy acknowledged her prior testimony and explained it. Katie just said she never remembered giving that testimony. Also, Stephanie was corroborated by Karen Sovar. And actually, if you look at her testimony on redirect, she said very specifically, my memory of that summer was not very good, but I remember this night because I was interviewed about it closely in time to these events. So with all of that said, we do believe this case was closely balanced. It hinged on the jury. He said, she said, and cars test. He did not testify at trial, but he did deny these statements in his interrogation, which was admitted as substantive evidence. And there were competing witnesses on both sides on every element of the offense. So for those reasons, we submit this case was close. And I, as I've stated in opening, the two errors we touched on here were so prejudicial that they could have to the scales against car. And for that reason, we would ask for him to receive a new trial. Okay, thank you very much. Miss Portland. I understand you're I'm assuming that you are joining us from Chicago. Yes. What type of